NOT FOR PUBLICATION

RECEIVED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOV 28 2011

AT 8:30_____ M
WILLIAM T. WALSH
CLERK

LAURENCE Y. HALIMI,

Plaintiff,

v.

Civ. No. 11-4195

PIKE RUN MASTER ASSOCIATION,
ACCESS PROPERTY MANAGEMENT,
INC., and USA HOMES REALITY LLC,

OPINION

Defendants.

THOMPSON, U.S.D.J.

## I.   INTRODUCTION

This matter is before the Court on Defendant USA Homes Realty, LLC's ("USA Homes") Motion to Dismiss the Complaint in Lieu of an Answer [docket #5]. Defendants Pike Run Master Association ("Pike Run") and Access Property Management, Inc., ("Access") (together with USA Homes, the "Defendants") have joined in this Motion [15]. Plaintiff opposes the motion [6]. The Court has decided the matter after considering the parties' written submissions and without holding oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, the Defendants' Motion is granted in part and denied in part.

## II.   BACKGROUND

This case arises from a dispute regarding the posting of signage in a residential community. On December 15, 2006, Plaintiff purchased a home within a planned unit development, which was operated by Defendant Pike Run and managed by Access, pursuant to an agreement between Pike Run and Access. (Compl. ¶¶ 3-4) [1, Ex. A]. Defendants Pike Run

and Access maintained a formal policy that barred individual home owners within the development from maintaining any signage without prior approval. (*Id.*, ¶ 7).

On or about September 1, 2010, Plaintiff listed her unit for sale. (*Id.*, ¶ 11). In order to advertise the property, Plaintiff's real estate agent placed a ReMax "for sale" sign on Plaintiff's front lawn. (*Id.*, ¶ 12). On or about September 3, 2010, a representative of Access notified Plaintiff that such signs are not permitted "anywhere on property, or visible in any windows" (the "First Violation Notice") (*Id.*, ¶ 13). The First Violation Notice further advised that the sign should be removed from Plaintiff's property to "bring the property into compliance." (*Id.*). Plaintiff's counsel responded by letter dated September 7, 2010, wherein counsel represented that Access and Pike Run's restrictions on signs was "illegal." (*Id.*, ¶ 14). In response, on September 8, 2010, the representative noted that the contract between the Plaintiff and Defendant Association is private, and, further advised that:

> Until such time as the Association's regulation becomes unenforceable by law, the Trustees expect that all owners will abide by same. They have given me instructions to impose a fine for your violation of the regulation (at $25.00 per day) as stipulated in the governing documents for as long as the violation continues. If the sign is removed promptly, there will be no fine.

(*Id.*, ¶ 15).

By email later that day, Plaintiff informed Access and Pike Run that the sign would be removed from Plaintiff's property, but that Plaintiff would consider "whether to place [the sign] again regardless of their threat of fines." (*Id.*, ¶ 16). In response, the representative apprised Plaintiff that signs were not permitted anywhere on the premises, including in windows. (*Id.*, ¶ 17). She further cautioned that "actions/inactions are charged back to that homeowner (and doing so has also been upheld in court)." (*Id.*)

Thereafter, Plaintiff placed one "for sale" sign in a window of her unit on Mondays through Fridays and one on her lawn on Saturdays and Sundays. (*Id.*, ¶ 18). On or about September 10, 2010, Plaintiff received a "Second Notice of Violation," directing her to remove the signs within fifteen days and/or request an appeal in writing within fourteen days. (*Id.*, ¶ 19). On September 13, 2010, Plaintiff indicated that she wished to appeal and requested further information as to the appeals procedure. (*Id.*, ¶¶ 13, 21).

Plaintiff was advised that Pike Run's Board of Trustees would consult with its attorney prior to proceeding further. (*Id.*, ¶ 22). Subsequently, by letter dated November 2, 2010, Defendant Pike Run informed Plaintiff that the current policy was that no signs, except directional signs during the hours of an open-house or those by the developer, were permitted within the development unless Pike Run granted advance, written permission to the homeowner. (*Id.*, ¶ 24). The letter further indicated that Pike Run had received an opinion from its attorney that, because the development is private property, Plaintiff's First Amendment claims did not apply to it. (*Id.*, ¶ 25). The letter additionally advised that Plaintiff would be subject to a fine of no more than $25 per day, beginning as of the first day of non-compliance, in addition to any legal fees incurred in the enforcement of Pike Run's regulation. (*Id.*, ¶¶ 26–27).

On November 15, 2010, Pike Run sent a "Final Notice" advising that Plaintiff was still in violation of the community policy, that a fine had been assessed against her account and that Plaintiff could invoke the dispute resolution process by notice to Pike Run within fourteen (14) days. (*Id.*, ¶ 28). Plaintiff responded by letter dated November 17, 2010, invoking the dispute resolution process. (*Id.*)

On or about December 7, 2011, Plaintiff was advised that Pike Run's November 2, 2010 letter had explained its position. (*Id.*, ¶ 32). Plaintiff responded by letter dated December 8,

2010 stating that she had not received the November 2, 2010 letter and that the sign had been removed. (*Id.*, ¶ 33). Thereafter, Plaintiff received a letter dated December 20, 2010, in which she was informed that she owed $1,820.72 to Pike Run, consisting of a small credit and $1,800 for violations through November 14, 2010 and $25.00 for violations on November 15, 2010. (*Id.*, ¶ 34). On January 7, 2011, Plaintiff requested a breakdown and explanation of the amount past due and, on January 13, 2011, she requested mediation. (*Id.*, ¶¶ 35, 37). Plaintiff did not receive a response to either of these requests. (*Id.*, ¶ 36).

Plaintiff eventually was able to secure a buyer for her home. (*See id.*, ¶¶ 31, 39). Prior to the closing for the sale of the unit, the buyer's counsel learned that a lien had been placed against the property for the fines assessed in connection with the sign postings. (*Id.*, ¶ 40). Although buyer's counsel suggested Plaintiff could place $5,000 in escrow against any fees assessed for the violations as well as any potential attorney's fees, Plaintiff paid the fee for the violations to Pike Run. (*Id.*, ¶¶ 41-42).

On June 13, 2011, Plaintiff filed a seven-count complaint in the Superior Court of New Jersey. Plaintiff alleges that Defendants, acting separately or in concert, acted "under color of law" within the meaning of 42 U.S.C. §§ 1983 and 1985 to deprive her of her property interest in violation of her rights guaranteed by the First Amendment and the Due Process Clause of the United States Constitution. (*Id.*, ¶¶ 45–47, 51). While Plaintiff did not plead any specific acts by USA Homes, Plaintiff alleges that USA Homes, as an "independent real estate broker/agency operating exclusively out of Defendant [Pike Run's] Club House," had a business relationship with Pike Run that allowed USA Homes to maintain "for sale" and "rental" signs on the common property and to maintain the details of particular homes within the development that are being offered for sale or rent to the public. (*Id.*, ¶¶ 5–6).

Plaintiff further seeks damages for the alleged violations by Defendants under the Constitution of the State of New Jersey; the New Jersey Civil Rights Act, N.J.S.A.10:6-2, 54-55; the New Jersey Antitrust Act, N.J.S.A.56:9-4(a); and under state common law.

On July 21, 2011, USA Homes removed this action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1446. (Notice of Removal, 1) [1]. Defendants now move to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff has failed to set forth a claim upon which relief can be granted.

### III. ANALYSIS

#### A. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a 12(b)(6) motion, a district court should conduct a two-part analysis. First, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The court, however, may disregard any legal conclusions proffered in the complaint. *Id.* Once the well-pleaded facts have been identified, a court must next determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009)). This requires more than a mere allegation of an entitlement to relief. *Id.* "A complaint has to 'show' such an entitlement with its facts." *Id.* A claim is only plausible if the facts pleaded allow a court reasonably to infer that the defendant is liable for the misconduct alleged. *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1948). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 194).

### B. Sections 1983 and 1985 claims

As indicated, in the First and Second Counts of the Complaint, Plaintiff appears to allege that Defendants, acting separately or in concert, acted "under color of law," within the meaning of 42 U.S.C. §§ 1983 and 1985, to deprive her of her property interest in violation of her rights guaranteed by the First Amendment and the Due Process Clause of the United States Constitution.

As an initial matter, Plaintiff's conclusory statements that the Defendant Pike Run acted "under color of law" and that USA Homes and Access "substantially assisted" Pike Run are not sufficient to maintain claims against Defendants, as private entities, under 42 U.S.C. § 1983. To state a claim pursuant to § 1983, a plaintiff must establish "(1) conduct committed by a person acting under color of state law, and (2) that this conduct deprived [him or] her of 'rights, privileges, or immunities secured by the Constitution and laws of the United States.'" *Lee-Patterson v. New Jersey Transit Bus Operations, Inc.*, 957 F. Supp. 1391, 1398 (D.N.J. 1997) (citation omitted). To the extent that Plaintiff Halimi is trying to proceed under 42 U.S.C. § 1983 against any of the Defendants,[1] success depends on whether she has plead facts that would tend to suggest that Defendants were sufficiently cloaked with the activity of the state so as to be considered acting under color of state law. As the Third Circuit has explained, when examining potential § 1983 liability for a non-state or municipal actor "[t]he principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (citations omitted); *see also Mauro v. Beil*, 213 F. App'x. 131, 132 (3d Cir.

---

[1] Plaintiff concedes in her Opposition Brief that Defendant USA Homes cannot be held liable under Section 1983. (Pls.' Opp'n Br., at 2 ("As to the argument that [USA Homes] cannot be liable to 42 U.S.C Section 1983, that is agreed.")).

2007) (affirming the dismissal of a complaint where plaintiff had not plead sufficient facts that would suggest that defendants had acted under color of state law).

Plaintiff has failed to plead sufficient facts that would suggest that Defendants' activity was conducted under color of law for the purposes of § 1983. *See Mark v. Borough of Hatboro*, 51 F.3d 1137, 1150 (3d Cir. 1995) (noting that under Supreme Court jurisprudence in order for a tortfeasor to be acting under color of state law, his act must entail misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of the state) (internal citation omitted). Nor has Plaintiff plead sufficient facts that would suggest that Defendants could be found liable under § 1985. To state a claim for conspiracy to deprive a person of her federal rights under § 1985, a plaintiff must allege a conspiracy, *motivated by discriminatory based animus*, for the purpose of depriving any person or class of the equal protection of law and an act in furtherance of conspiracy, whereby a person is injured. *See United Bhd. of Carpenters & Joiners Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983) (emphasis added); 42 U.S.C. § 1985. Additionally, because the First Amendment restrains only conduct by government actors, plaintiffs claiming an infringement of right that has its source in the First Amendment are required, in making out a case under the civil rights conspiracy statute, to prove that state was somehow involved in or affected by the conspiracy. *Brotherhood*, 463 U.S. at 833. As discussed previously, Plaintiff has not alleged sufficient facts to demonstrate state involvement in the speech restrictions at issue.

Moreover, in order to give "full effect" to the Congressional purpose of § 1985, the Supreme Court of the United States has noted, "there must be some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to

all." *Brotherhood*, 463 U.S. at 829. Here, Plaintiff does not allege that Defendants were motivated by discriminatory animus, but that the alleged "conspiracy" served to bar every type of speech other than its own commercial speech. Such "conspiracies" have not been held to be violative of § 1985. *See, e.g., Brotherhood*, 463 U.S. at 838 ("We thus cannot construe § 1985(3) to reach conspiracies motivated by economic or commercial animus.").

Therefore, the counts of the Complaint relating to Plaintiff's §§ 1983 and 1985 claims are properly dismissed.

### C. State Law Claims

Plaintiff's Complaint also alleges certain claims arising under state law. However, absent an independent source of federal subject matter jurisdiction, this Court declines to exercise jurisdiction over Plaintiff's potential state-law claims. *See* 28 U.S.C. § 1367(c)(3); *Banks v. Hayward*, 221 F. App'x 98, 101 (3d. Cir. 2007) ("A district court may decide against exercising its supplemental jurisdiction over the state-law claims that remain after all federal claims are dismissed"). Particularly because Plaintiff's counsel has alerted the Court that the New Jersey Supreme Court is currently reviewing the issue of sign restrictions by homeowners associations [16], this Court believes state court is the appropriate forum for this action.

### IV. CONCLUSION

For the reasons set forth above, and for good cause shown, Defendants' Motion to Dismiss is granted in part and denied in part. This Court will remand the remaining state law claims to the Superior Court of New Jersey, Somerset County for resolution. An appropriate Order will be entered.

_____
ANNE E. THOMPSON, U.S.D.J.

Dated: November 23, 2011